**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**IN THE MATTER OF
THE EXTRADITION OF**                          Case No.:  4:06mj136-WCS
**STEVEN LEE BATCHELDER**
_____/

**MEMORANDUM:  THE LAW OF EXTRADITION**

Steven Lee Batchelder was provisionally arrested at the request of the Government of Canada pursuant to the Extradition Treaty between the United States and Canada.  In this matter, the United States acts on behalf of the Canadian government.  On February 21, 2007, Canada, the requesting state, submitted a formal request for Batchelder's extradition, as required under the treaty, supported by appropriate documents, to the Department of State.  Doc. 17.

By statute, this court must thereafter hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention . . . ." 18 U.S.C. §3184.  If the court finds the fugitive extraditable, it certifies that conclusion to the Secretary of State, who decides whether to surrender him.  Because the law regulating extradition differs from ordinary criminal or civil proceedings so much as to be classed *sui generis*, the government offers this memorandum as a guide to the nature of the hearing and a description of its distinctive features.

I.      **Nature of the Hearing**

   A.      *Purpose of Hearing*

The purpose of the hearing required by 18 U.S.C. §3184 is to determine whether a person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject

to surrender to the requesting country under the terms of the pertinent treaty and relevant law. If the court decides that the elements necessary for extradition are present, it incorporates these determinations in factual findings and conclusions of law styled as a certification of extraditability which is forwarded to the Department of State for disposition by the Secretary of State. The decision to surrender the fugitive rests with the Secretary.

      B.     *Elements Necessary for Extradition*

There are several formulations of the requirements for extradition. An early Supreme Court opinion held that a determination of extraditability was proper if: (1) the judicial officer was authorized to conduct extradition proceedings; (2) the court had jurisdiction over the fugitive; (3) the applicable treaty was in full force and effect; (4) the crimes for which surrender was requested were covered by the treaties; and (5) there was competent legal evidence for the decision. *Ornelas v. Ruiz*, 161 U.S. 502, 510 (1896); *McNamara v. Henkel*, 226 U.S. 520, 523 (1913); *Bingham v. Bradley*, 241 U.S. 511, 516-17 (1916); *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984). Another formula calls for a determination that: (1) there are criminal charges pending in the requesting state; (2) the charges are included under the treaty as extraditable offenses; and (3) there is probable cause to believe that a crime was committed and that the person before the court committed it. *United States v. Barr*, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1360 (S.D. Fla. 1999). This memorandum will briefly discuss these elements, drawing on both *Ornelas* and *Barr*.

    1. Authority of the judicial officer.

The statute, 18 U.S.C. §3184, authorizes a broad class of judicial officers to hear extradition cases. The authority of the judicial officer to hold an extradition hearing was a more

contentious issue in the law's early days when cases were brought by private counsel before all manner of courts. Federal judges are clearly authorized by the statute to hear and decide extradition cases; the statute provides that magistrates may do so if permitted by rule of their court. *See, Ward v. Rutherford*, 921 F.2d 286, 289 (D.C. Cir. 1990) (rejecting constitutional challenge to magistrate's authority). In this case, this Court may hear the extradition proceeding as authorized by Local Rule. *See* U.S. Dist. Ct. Rules for N.D. Fl., Rule 72.2 (E)(14) ("Additional Duties" of magistrate include "conduct extradition proceedings"); *see also Noel v. United States*, 12 F. Supp. 2d 1300, 1305 (M.D. Fla. 1998).

    2. Jurisdiction over the fugitive.

Although the Supreme Court included personal jurisdiction as an essential element for reasons of analytic completeness, the question of jurisdiction has not been a decisive issue in an extradition case in modern times. If the fugitive is before the court, the court has personal jurisdiction. *See, In re Pazienza*, 619 F. Supp. 611, 618 (S.D.N.Y. 1985).

    3. Treaty in full force and effect.

The extradition statute, 18 U.S.C. §3184, appears to limit extradition to instances in which a treaty is in force between the requesting state and the requested state, and several cases have so held. *See, e.g., Argento v. Horn*, 241 F.2d 258, 259 (6th Cir. 1957). As part of its proof, the government has provided a declaration from Emily Daughtry, an attorney in the Office of the Legal Adviser of the Department of State, attesting that the treaty is in full force and effect. *See* Doc. 15, Attachment A. While not controlling, the Department of State's opinion in this sphere is entitled to deference from the court. *Galanis v. Pallanck*, 568 F.2d 234, 239 (2nd Cir. 1977)

(due "respect"); *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir. 1969) ("great weight and importance"), *cert. denied*, 398 U.S. 903 (1970).

    4.  Charges or conviction in the requesting state.

The treaty provides for the return of fugitives charged with or convicted of a crime in the requesting state. *See Treaty on Extradition Between the United States of American and Canada*, December 3, 1971, Art. 1, TIAS 8237. The documents submitted by the requesting state establish that the fugitive has been charged. See Doc. 15. Because criminal procedures under other systems differ from ours, the charging document will not necessarily be an indictment or a criminal information. In many countries, the charges are reflected in the arrest warrant. The Court should not be drawn into a technical dispute over the significance of the term "charging document." *Matter of Assarsson*, 687 F.2d 1157, 1160 (8th Cir. 1982)

    5.  Crime covered by the treaty.

Extradition treaties create an obligation to surrender fugitives under the circumstances defined in the treaty. The treaty may specify that extradition can be had for particular offenses that are listed in the treaty, for any serious offense that is punishable in both the requesting and requested state, for some combination of those two categories, or for an even broader range of offenses. The court must determine whether the crime for which extradition is requested is among the offenses specified in the treaty as giving rise to an obligation to extradite.

Dual criminality is not required *per se* for extradition; it need be found only if the treaty so requires. *Factor v. Laubenheimer*, 290 U.S. 276, 290-91 (1933); *In re Assarsson*, 635 F.2d 1237, 1245 (7th Cir. 1980). A requesting country is not obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours. *Kelly v.*

*Griffin*, 241 U.S. 6, 15 (1916). If a dual criminality analysis is required, the court should examine the facts and decide whether the fugitive's conduct would have been criminal under our law. The Supreme Court noted in *Collins v. Loisel*, 259 U.S. 309 (1922) that:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added). *Accord, Messina v. United States*, 728 F.2d 77, 79 (2nd Cir. 1984); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981); *United States ex rel. Rauch v. Stockinger*, 269 F.2d 681, 687 (2nd Cir.), *cert. denied*, 361 U.S. 913 (1959); United States ex rel. *Di Stefano v. Moore*, 46 F.2d 308, 310 (E.D.N.Y.), *aff'd*, 46 F. 2d 310 (2nd Cir. 1930), *cert. denied sub nom. United States ex rel. Di Stefano v. Pulver*, 283 U.S. 830 (1931). The court's analysis of the question of dual criminality is subject to the general requirement that it "approach challenges to extradition with a view towards finding the offense within the treaty." *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

In comparing the foreign offense with United States law to decide the question of dual criminality, the magistrate may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981).

      6. Competent legal evidence

This is the familiar requirement of probable cause to believe that a crime was committed and that the person before the court committed it. The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Sindona v. Grant*, 619 F.2d 167, 175 (2nd Cir. 1980); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1361 (S.D. Fla.

1999). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel, supra*, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. at 316. The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a full trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

*Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976.) *See also, Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962); *Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 377 U.S. 977 (1964); *In re Ryan*, 360 F. Supp. 270, 273 (E.D.N.Y.), *aff'd*, 478 F.2d 1397 (2nd Cir. 1973).

    C.    *Role of the Judicial Officer*

The court considers the evidence presented on behalf of the requesting state and determines whether the elements defined in the treaty and the case law cited above have been established. If any explanatory evidence or evidence in support of an affirmative defense specified in the treaty is offered, the court rules on it. The court makes written findings of fact and conclusions of law as to each of the elements, including separate findings for each offense as

to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894 (2nd Cir. 1973)(separate findings). If the fugitive is determined to be extraditable, he or she is committed to the custody of the United States Marshal to await the determination by the Secretary of State and transfer to the representatives of the requesting state. The court's Certification of Extraditability is provided to the Secretary of State together with a copy of any evidence presented on behalf of the fugitive. 18 U.S.C. §3184.

II. **Distinctive Features of the Law of Extradition**

    A. *Extradition Hearing Not a Criminal Proceeding*

An extradition hearing is not a criminal proceeding; its purpose is merely to decide probable cause, not guilt or innocence. *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Simmons v. Braun*, 627 F.2d 635, 636 (2nd Cir. 1980); *United States ex rel. Oppenheim v. Hecht*, 16 F.2d 955, 956 (2nd Cir. 1927). Thus, the person whose extradition is sought is not entitled to the rights available in a criminal trial at common law. *Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *Glucksman v. Henkel*, 221 U.S. 508, 512 (1911); *United States ex rel. Rauch v. Stockinger*, 269 F.2d 681, 687 (2nd Cir.), *cert. denied*, 361 U.S. 913 (1959). For example: the fugitive has no right to discovery or even to cross-examination if any witnesses testify at the hearing (*Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984)); his or her right to present evidence is severely limited (*Messina, supra, and see* Sections II. D and E, *infra*); and the Sixth Amendment's guarantee to a speedy trial, being limited by its terms to criminal prosecutions, does not pertain to extradition proceedings (*Jhirad v. Ferrandina*, 536 F.2d 478, 485 n.9 (2nd Cir. 1976); *c.f.*, *Yapp v. Reno*, 26 F.3d 1562, 1568 (11th Cir. 1994)).

B. *Inapplicability of Federal Rules of Criminal Procedure and Evidence*

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Rule 54(b)(5), Fed. R. Crim. P., provides: "[t]hese rules are not applicable to extradition and rendition of fugitives." The Federal Rules of Evidence are also inapplicable. Rule ll0l(d)(3), Fed. R. Evid., provides that "[t]he rules (other than with respect to privileges) do not apply in . . . [p]roceedings for extradition or rendition . . . ." *See, Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981); *Greci v. Birknes*, 527 F.2d 956, 958 n.2 (lst Cir. 1976); *Merino v. United States Marshal*, 326 F.2d 5, 12 (9th Cir. 1963).

C. *Admissibility of Evidence*

"Unique rules of 'wide latitude' . . . govern reception of evidence in Section 3184 hearings." *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969)(citation omitted). Among these unique rules are the following:

1. Admissibility of hearsay.

Hearsay evidence is admissible at extradition hearings and may support a finding of extraditability. *Collins v. Loisel*, 259 U.S. 309, 317 (1922); *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977); *In re David*, 395 F. Supp. 803, 806 (E.D. Ill. 1975); *United States ex rel. Eatessami v. Marasco*, 275 F. Supp. 492, 494 (S.D.N.Y. 1967). Extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Thus, a finding of extraditability may be, and typically is, based entirely on documentary evidence. *Shapiro v. Ferrandina, supra*, 478 F.2d at 901-03; *O'Brien v. Rozman, supra*, 554 F.2d at 783; *In re Edmondson*, 352 F. Supp. 22, 24 (D. Minn. 1972).

2. Certification of documents.

In *Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981), the court held that 18 U.S.C. §3190 governs the admissibility of statements submitted by the requesting state and is satisfied by a certification that accords with the terms of the statute. *Id*. at 107; s*ee also, Collins v. Loisel, supra.* Alternatively, documents may be received in evidence if they are certified in accordance with the terms of the treaty. *Emami v. United States District Court*, 834 F.2d 1444, 1451 (9th Cir. 1987); *Cucuzzella*, 638 F.2d at 108..

D. *Limitations on Fugitive's Evidence*

A fugitive's right to controvert the evidence introduced against him is limited to testimony which explains rather than contradicts the demanding country's proof. *Charlton v. Kelly,* 229 U.S. 447, 461 (1913); *United States v. Peterka*, 307 F. Supp. 2d 1344, 1349 (M.D. Fla. 2003); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1361 (S.D. Fla. 1999); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428 (S.D. Fla. 1993), *aff'd*, 28 F. 3d 116 (11th Cir. 1994); *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir. 1978). The district court in *In Re Sindona*, 450 F. Supp. 672 (S.D.N.Y. 1978), *aff'd sub nom. Sindona v. Grant*, 619 F.2d 167 (2nd Cir. 1980), discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits. The Supreme Court has twice cited with approval a district court case which

aptly summarizes the relevant considerations.  The Supreme Court decisions are *Collins v. Loisel*, 259 U.S. 309, 316, 42 S .Ct. 469, 66 L. Ed. 956 (1922), and *Charlton v. Kelly*, 229 U.S. 447, 461, 33 S. Ct. 945, 57 L. Ed. 1274 (1913).  The district court opinion is *In re Wadge*, 15 F. 864, 866 (S.D.N.Y 1883), in which the court dealt with the argument of an extraditee that he should be given an extensive hearing in the extradition proceedings:

> "If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter.  The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here.  This would be in plain contravention of the intent and meaning of the extradition treaties."

450 F. Supp at 685.  The extent to which the fugitive may offer explanatory proof is largely within the discretion of the committing judicial officer.  *Hooker v. Klein, supra,* 573 F.2d at 1369; *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2nd Cir. 1963), *cert. denied*, 376 U.S. 952 (1964)(citing cases).  However, some matters are clearly contradictory and thus impermissible.  *See*, Section II. E, below.

   E. *Impermissible Defenses*

Defenses against extradition which "savor of technicality" should be rejected by a court as they are peculiarly inappropriate in dealings with a foreign nation.  For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender.  *Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1911).  *Accord, Bingham v. Bradley*, 241 U.S. 511, 517-18 (1916); *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-29 (2nd Cir. 1974); *Shapiro v. Ferrandina, supra*, 478 F.2d at 904; *In re Edmondson*, 352 F. Supp. 22, 24-25 (D. Minn. 1972).

1.  Conflicting evidence.

The fugitive's grounds for opposition to the extradition request are severely circumscribed.  *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *In Re Shapiro*, 352 F. Supp. 641, 645 (S.D.N.Y. 1973).  He may not introduce evidence which:  conflicts with the evidence submitted on behalf of the demanding state (*Collins v. Loisel*, 259 U.S. 309, 315-17 (1922)); establishes an alibi (*Abu Eain v. Adams*, 529 F. Supp 685, 691 (N.D. Ill. 1980)); sets up an insanity defense (*Charlton v. Kelly, supra*); or impeaches the credibility of the demanding country's witnesses (*In re Locatelli*, 468 F. Supp. 568, 573-74 (S.D.N.Y. 1979)).  He is limited to introducing explanatory evidence.  *See* Section II. D, above.

2.  Trial in demanding country on other charges.

A fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be granted, or that surrender is being requested for political offenses, must be rejected as baseless, without merit, or beyond the responsibility of the court, for the United States Government does not presume that the demanding government will seek a trial in violation of a treaty.  *Bingham v. Bradley*, 241 U.S. 511, 514-15 (1916).  As the district court noted in *Gallina v. Fraser*, 177 F. Supp. 856 (D. Conn. 1959):  "the Secretary of State of the United States would not authorize the surrender of a fugitive . . . to be punished for non-extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."  *Id*. at 867.

3.  Motivation of demanding country:  rule of non-inquiry.

Should a fugitive suggest that a court look behind the extradition request to the motives of the government of the demanding country, the answer may be found in *In re Lincoln*, 228 Fed.

11

70, 74, (E.D.N.Y. 1915):

> . . . it is not a part of the court proceedings nor of the hearing upon the charge of crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith.  Such matters should be left to the Department of State.

In *In re Gonzalez*, the court further noted that 18 U.S.C. §3184 gives it no authority to inquire into such matters.  *In re Gonzalez*, 217 F. Supp. 717, 722, n.15 (S.D.N.Y. 1963).  *Accord, In re Singh*, 123 F.R.D. 127, 129-37 (D.N.J. 1987)(citing cases on doctrine of non-inquiry).  In *Ramos v. Diaz*, 179 F. Supp. 459, 463 (S.D. Fla. 1959), the court clearly stated that the motive of the demanding government in an extradition proceeding is not controlling; the circumstances surrounding the offense when it occurred are dispositive.  *See also, In Re Locatelli*, 468 F. Supp. 568, 575 (S.D.N.Y. 1979).

    4.  Lack of U.S. constitutional protections abroad.

Questions concerning the judicial procedure in the requesting state and the treatment that might be accorded the fugitive after extradition are not proper matters for consideration by the certifying judicial, according to what the Second Circuit refers to as "substantial authority."  *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2nd Cir. 1990)(citing *Sindona v. Grant*, 619 F.2d 167, 174 (2nd Cir. 1980); *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2nd Cir.), *cert. denied,* 429 U.S. 833 (1976); *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983); *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971), *cert. denied*, 405 U.S. 989 (1972); *In Re Tang Yee-Chun*, 674 F. Supp. 1058, 1068-69 (S.D.N.Y. 1987). Considering the same issue in a slightly different context, the Court of Appeals for the District of Columbia Circuit said:

> What we learn from *Neely* [*Neely v. Henkel*, 180 U.S. 109 (1901)] is that a surrender of

12

>an American citizen required by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguard in all respects equivalent to those constitutionally enjoined upon American trials.

*Holmes v. Laird*, 459 F.2d 1211, 1219 (D.C. Cir.), *cert. denied*, 409 U.S. 869 (1972). *Accord, Pfeifer v. United States Bureau of Prisons*, 468 F. Supp. 920, 924 (S.D. Cal. 1979), *aff'd* 615 F.2d 873 (9th Cir. 1980). Another court disposed of the issue in the following words:

> Regardless of what constitutional protections are given to persons held *for trial* in the courts of the United States or of the constituent states thereof, those protections cannot be claimed by an accused whose trial and conviction have been held or are to be held under the laws of another nation, acting according to its traditional processes and within the scope of its authority and jurisdiction.

*Gallina v. Fraser*, 177 F. Supp. 856, 866 (D. Conn. 1959) (emphasis in original), *aff'd,* 278 F.2d 77 (2nd Cir. 1960).

      F. *Extradition Treaties to Be Liberally Interpreted*

Extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses. *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933). In discussing the application of this rule, the District Court for the Southern District of Florida in *McElvy v. Civiletti*, 523 F. Supp. 42 (S.D. Fla. 1981), noted that:

> [a] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them. [citations omitted].

*Id*. at 47; *see also United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1360 (S.D. Fla. 1999).

In order to carry out a treaty obligation the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor v. Laubenheimer*, supra, 290 U.S. at 298; *In re Chan Kam-Shu*, 477 F.2d 333, 338 n.9 (5th Cir. 1973).  This country does not expect foreign governments to be versed in our criminal laws and procedures.  *Grin v. Shine*, 187 U.S. 181, 184 (1902).  Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925). This approach is mandated by the liberal rules of construction that are to be used in interpreting extradition agreements.

Statements by the United States Department of State as to interpretation of treaties are to be given great weight by our courts.  *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir. 1969), *cert. denied*, 398 U.S. 903 (1970); *In re D'Amico*, 177 F. Supp. 648, 653 n.7 (S.D.N.Y. 1959), *appeal dismissed sub nom. United States ex rel. D'Amico v. Bishopp*, 286 F.2d 320 (2nd Cir.), *cert. denied sub nom. Farace v. D'Amico*, 366 U.S. 963 (1961).

G.  *Fugitive for Extradition Purposes*

The nature of the fugitive's absence from the country seeking his surrender is immaterial; it is sufficient for purposes of extradition that he be found in the United States.  *Vardy v. United States*, 529 F.2d 404, 407, *reh. denied*, 533 F.2d 310 (5th Cir. 1976); *In Re Chan Kam-Shu, supra*, 477 F.2d at 338-339; *United States ex rel. Eatessami v. Marasco, supra*, 275 F. Supp. at 496.

**CONCLUSION**

Extradition hearings are often characterized as *sui generis*.  *See, e.g., Hooker v. Klein, supra*, 573 F.2d at 1369 (Chambers, J., concurring).  Despite the unusual nature of the

proceedings, there is no mystery to the law of extradition:  it is regulated by a body of well-settled precedent, much of it originating with the Supreme Court.  *See Ahmad v. Wigen, supra*, 910 F.2d at 1064-65.  Although other elements must also be present, the paramount issue of every extradition proceeding is whether there exists probable cause to believe that the fugitive has committed the crimes charged in the requesting country.  The latter determination is the kind that courts make in a preliminary hearing under Rule 5.1, Fed. R. Crim. P.  *Ward v. Rutherford, supra.*  The extradition hearing must not be converted into a trial on the merits, and the rules ordinarily applicable in such trials are not used.  The extraditee's opportunities to oppose the request are limited because his defenses will be aired in the requesting country.  The court's findings of fact and conclusions of law should deal with each of the elements listed above, and with each offense for which extradition is requested.

    Respectfully submitted,

                              GREGORY R. MILLER
                              United States Attorney

                              _s/ Robert O. Davis_
                              ROBERT O. DAVIS
                              Assistant United States Attorney
                              D.C. Bar No. 250274
                              111 North Adams Street, 4th Floor
                              Tallahassee, Florida, FL 32301
                              (850) 942-8430

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

| | |
|---|---|
| Michael Robert Ufferman | R. Timothy Jansen |
| Michael Ufferman Law Firm, P.A. | R. Timothy Jansen, P.A. |
| 2022-1 Raymond Diehl Road | 1206 North Duval Street |
| Tallahassee, Florida 32308. | Tallahassee, Florida 32303 |

                                                                                   s/ Robert O. Davis
                                                                          Robert O. Davis
                                                                          Assistant United States Attorney